UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

b

| | |
|---|---|
| LOUIS VERNON JACKSON | CIVIL ACTION NO. 1:15-CV-00635 |
| VERSUS | JUDGE DRELL |
| CITY OF NACTHITOCHES, et al. | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

I. Background

Before the Court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, *in forma pauperis*, by pro se plaintiff Louis Vernon Jackson ("Jackson") on March 16, 2015 and amended on May 26, 2015 (Dc. 6). The named defendants are Christopher B. Knight ("Knight") and Julius Armstrong ("Armstrong"), officers employed by the City of Natchitoches Police Department.

Jackson contends that, on April 29, 2014, Knight and Armstrong arrested and handcuffed him at work pursuant to an allegation of rape by Jennifer Player, detained him for about twelve hours, then released him because there was no probable cause for the arrest. Jackson contends he was falsely arrested, falsely imprisoned, and defamed by Defendants. Jackson seeks monetary damages (Doc. 5) and a jury trial (Doc. 17). Jackson is currently residing in Natchitoches, Louisiana (Doc 57).

1

Defendants answered the complaint (Doc. 13) and filed a motion for summary judgment (Doc. 33). Jackson filed a response to Defendants' motion (Doc. 39). Defendants' motion is now before the Court for disposition.

## II.   Law and Analysis

Defendants argue they are entitled to a summary judgment because: (1) Jackson was only detained and not arrested; (2) Jackson's detention was based on probable cause; (3) Jackson has not produced evidence of any defamatory statements by Defendants; and (4) Defendants are entitled qualified immunity.

### A.   Standards governing the motion for summary judgment.

Rule 56 of the Federal Rules of Civil Procedure mandates that the Court shall grant a summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order.

Local Rule 56.2 also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

Substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. See Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then offer evidence sufficient to establish a genuine issue of material fact. In this analysis, the Court reviews the facts and draws all inferences most favorable to the nonmovant. See Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. See Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).

### B. The defense of qualified immunity in general.

The defense of qualified immunity protects a public official from both litigation and liability, absent a showing that the official violated a constitutional right that was clearly established at the time of the incident. See Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995), cert. den., 516 U.S. 1084 (1996). Qualified immunity cloaks a police officer from personal liability for discretionary acts that do not violate well-established law. Officers have qualified immunity if their actions could reasonably have been thought consistent with the right they are alleged to have violated. See Richardson v. Oldham, 12 F.3d 1373, 1380-81 (5th Cir. 1994), and cases cited therein.

Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.  See Hope v. Pelzer, 536 U.S. 730, 739 (2002).

Invocation of the qualified immunity defense shifts the burdens of proof in federal civil rights lawsuits brought against public officials for actions or omissions attending their performance of official duties:

> The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.

See Bazan v. Hidalgo County, 246 F.3d 481, 489 (5th Cir. 2001) (citing Salas v. Carpenter, 980 F.2d 299, 306 (5th Cir. 1992)).

The bifurcated test for qualified immunity is: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident.  See Hare v. City of Corinth, 135 F.3d 320, 325 (5th Cir. 1998).

The first step is to determine whether the plaintiff has alleged violation of a clearly established constitutional right.  This analysis is made under the currently applicable constitutional standards.  See Hare, 135 F.3d at 325.  A constitutional right is clearly established if, in light of pre-existing law, the unlawfulness is apparent.  Officials must observe general, well-developed legal principles.  See Doe v. Taylor Independent School Dist., 15 F.3d 443, 445 (5th Cir.), cert. den., 513 U.S. 815 (1994).

The second prong, objective reasonableness, is a question of law. The analysis for objective reasonableness is different from that for deliberate indifference (the subjective test for addressing the merits). For qualified immunity, the subjective deliberate indifference standard serves only to demonstrate the clearly established law in effect at the time of the incident and, under that standard (the minimum standard not to be deliberately indifferent), the actions of the individual defendants are examined to determine whether, as a matter of law, they were objectively unreasonable. See Hare, 135 F.3d at 328.

The qualified immunity doctrine does not protect an official whose subjective intent was to harm the plaintiff, regardless of the objective state of the law at the time of his conduct. See Douthit v. Jones, 619 F.2d 527, 533 (5th Cir. 1980). A party seeking to avoid a qualified immunity defense must prove that the official either actually intended to do harm to him, or took an action which, although not intended to do harm, was so likely to produce injury that the harm can be characterized as substantially certain to result. See Douthit, 619 F.2d at 533.

C. Jackson was not falsely arrested and imprisoned.

Jackson alleges he was falsely arrested and imprisoned on April 29, 2014. Defendants contend they did not arrest Jackson, but only detained him for investigation of Player's accusation that he raped her. Defendants contend there was probable cause to detain Jackson on April 29, 2015.

The constitutional torts of false arrest, unreasonable seizure, and false imprisonment require a showing that there was no probable cause. See Brown v.

Lyford, 243 F.3d 185, 189 (5th Cir. 2001), cert. den., 534 U.S. 817 (2001). The right to be free from arrest without probable cause is a constitutional right that was clearly established in 2015. See Beck v. Ohio, 379 U.S. 89, 91 (1964) (the right to be free from arrest without probable cause is a clearly established constitutional right).

### 1. Jackson was arrested by defendants.

Defendants Knight and Armstrong state in their affidavits that, after they spoke to Jennifer Player in the hospital and she told them Jackson had raped her, they decided Jackson might be a flight risk. Knight and Armstrong went to Jackson's place of employment, Pilgrim's Pride, and told him he was *not* under arrest but was "under investigation" for rape. Officers Knight and Armstrong handcuffed Jackson, took him to the police station, read him his Miranda[1] rights, and placed him in a holding cell while they investigated Jennifer Player's rape accusation (Doc. 33-2).

The Fifth Circuit has explained that there are three types of encounters between police and individuals, each of which has different ramifications under the Fourth Amendment. See United States v. Cooper, 43 F.3d 140, 145–46 (5th Cir. 1995). The first type is a consensual encounter, in which an individual willingly agrees to speak with a police officer and which may be initiated by the police without any objective level of suspicion. See Cooper, 43 F.3d at 145. The second type is the investigative stop, also known as a Terry stop, based on the analysis used by the

---

[1] Miranda v. Arizona, 384 U.S. 436, 475 (1966).

6

Supreme Court in Terry v. Ohio, 392 U.S. 1 (2968). Under Terry, certain seizures are justifiable if there is articulable suspicion that a person has committed or is about to commit a crime. Traffic stops are analyzed under Terry. See Cooper, 43 F.3d at 145. The third type of encounter is an arrest, which is a Fourth Amendment seizure and must be based on probable cause. See Cooper, 43 F.3d at 146.

Detention for custodial interrogation—regardless of its label—intrudes so severely on interests protected by the Fourth Amendment as to trigger the traditional safeguards against illegal arrest. See Dunaway v. New York, 442 U.S. 200, 216 (1979). In Dunaway, the Supreme Court found the detention of petitioner was, in important respects, indistinguishable from a traditional arrest because: (1) he was not questioned briefly where he was found but was instead transported to a police station in a police car and placed in an interrogation room; and (2) he was never informed that he was "free to go" and would have been physically restrained if he had refused to accompany the officers or had tried to escape their custody. The Court stated that the mere facts that petitioner was not told he was under arrest, was not "booked," and would not have had an arrest record if the interrogation had proved fruitless, did not make petitioner's seizure even roughly analogous to a Terry stop.

The Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of the citizenry, whether these intrusions are termed "arrests" or "investigatory detentions." See Dunaway, 442 U.S. at 214–15. Custodial questioning without the consent of the suspect, and on less than probable cause for a full-fledged

7

arrest, is unlawful.  U.S. v. Webster, 750 F.2d 307, 320 (5th Cir. 1984), cert. den., 471 U.S. 1106 (1985) (citing Dunaway, 442 U.S. at 202).

In this case, on April 29, 2015, Jackson was forcibly removed from work, handcuffed, taken to the police station in a police car, given his Miranda warnings, and placed in a holding cell for twelve hours.  Despite the fact that Officers Knight and Armstrong told Jackson he was not under arrest, it is clear that he was arrested and not merely detained for interrogation.

### 2. Defendants had probable cause to arrest Jackson.

The next issue before the Court is whether Defendants had probable cause to arrest and imprison Jackson on April 29, 2015.

 An officer has probable cause to arrest if, at the time of the arrest, he had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime.  See Gladden v. Roach, 864 F.2d 1196, 1199 (5th Cir.), cert. den., 491 U.S. 907 (1989); see also Hunter v. Bryant, 502 U.S. 224, 228 (1991).  If probable cause for an arrest even arguably existed, immunity cannot be lost.  See Brown, 243 F.3d at 190.

Defendants argue they had probable cause to arrest Jackson.  Officers Knight and Armstrong state in affidavits that, on April 29, 2014, Jennifer Player and Shalonda Calhoun told them that Jackson had entered their apartment without permission and raped Player (Docs. 33-4, 33-5).  Knight and Armstrong decided Jackson might be a flight risk, so they went to Jackson's place of employment and told him he was not under arrest, but was under investigation for rape.  They

8

handcuffed Jackson, took him to the police station, read him his Miranda rights, and placed him in a holding cell for about twelve hours, while they investigated Jennifer Player's rape accusation (Doc. 33-2).

An affidavit from Natchitoches City Police Detective Jeff Townson (Doc. 33-6) shows he obtained an arrest warrant for Jackson on May 2, 2014, based on probable cause to believe he had committed aggravated rape of Player. The arrest warrant and affidavit attached to Townson's affidavit show that probable cause was established by Jennifer Player's statement to the police. Townson further stated in his affidavit that he obtained a second arrest warrant for Jackson on July 21, 2014, based on probable cause to believe he had committed aggravated burglary of Player's apartment (Doc. 33-6). Probable cause was established by Player's and Calhoun's statements to the police.

Defendants' statement of material facts (Doc., 330-3) and the transcript of Jackson's preliminary hearing (Doc. 39-1, pp. 60-61/70) show the charges against Jackson (aggravated rape and aggravated burglary) were subsequently amended to unauthorized entry of an inhabited dwelling, to which Jackson pleaded guilty on May 5, 2015.

The police had probable cause to arrest Jackson on April 29, 2014 based on the victim's statement and identification of Jackson. See Johnson v. Bavetta, 2011 WL 4351479, *4 (S.D. Miss. 2011) (police had probable cause to arrest defendant for rape based on victim's statement and identification). The warrant issued on May 2, 2014 for Jackson's arrest for aggravated rape was based only on Player's statement. That

9

is the same evidence Officers Knight and Armstrong had when they arrested Jackson on April 29, 2014. The evidence that was found sufficient to establish probable cause for an arrest warrant on May 2, 2014 was also sufficient to establish probable cause for a warrantless arrest on April 29, 2014. See Williams v. DiVittoria, 777 F.Supp. 1332, 1337 (E.D. La. 1991) (once a court determines in subsequent judicial proceedings that an arrest was made with probable cause, or that the exiting charges are supported by probable cause, a plaintiff cannot argue in a civil action for false arrest that the initial arrest was illegal).

Therefore, Officers Knight and Armstrong did not falsely arrest and imprison Jackson, and they are entitled to qualified immunity. Since there are no genuine issues of material fact that preclude a summary judgment, defendants' motion for summary judgment should be granted on this issue.

D.   Defendants did not defame Jackson.

Jackson also contends he was defamed by Officers Knight and Armstrong when they arrested him at work on April 29, 2014 and told his employer why he was being arrested. Jackson contends he was embarrassed in front of his supervisors and coworkers.

A § 1983 claim is recognized in relation to a defamatory statement made by a state actor only where a state actor has made concrete, false assertions of wrongdoing on the part of the plaintiff. Hahn v. City of Kenner, 984 F.Supp. 424, 432 (E.D. La. 1997) (citing Blackburn v. City of Marshall, 42 F.3d 925, 936 (5th Cir. 1995)).

However, infliction of a stigma on a person's reputation by a state official, without more, does not infringe upon a protected liberty interest. See Paul v. Davis, 424 U.S. 693 (1976); see also Marrero v. City of Hialeah, 625 F.2d 499, 513 (5th Cir. 1980). Reputation alone, apart from some more tangible interests such as employment, is not liberty or property sufficient to invoke the procedural protection of the Due Process Clause, and does not suffice for recovery under § 1983. In re Selcraig, 705 F.2d 789, 795 (5th Cir. 1983) (citing Paul, 424 U.S. at 701).

On his initial arrest, Officers Knight and Armstrong told Jackson's supervisor that he had been *accused* of rape. That was a patently true statement. Jackson was not defamed because he was arrested at work by Officers Knight and Armstrong on April 29, 2014. Moreover, a claim of embarrassment due to defamation, standing alone, is not compensable under § 1983.

Since there are no genuine issues of material fact that would preclude a summary judgment, Defendants' motion for summary judgment should be granted on this issue.

### III. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Defendants' motion for summary judgment (Doc. 33) be GRANTED and that Jackson's action be DENIED AND DISMISSED IN ITS ENTIRETY WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to

another party's objections within **fourteen (14) days** after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before making a final ruling.

A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana on this 9th day of September 2016.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge